(46 Misc. Rep. 139.)

### WEBSTER REALTY CO. v. THOMAS.

(Supreme Court, Special Term, New York County. January, 1905.)

1. VENDOR AND PURCHASER—CONTRACTS IN COUNTERPART—ALTERATION—ESTOPPEL.
    A contract for the sale of real estate was prepared in counterparts, one of which was signed by each party. A clause relating to incumbrance provided "that the north walls of the buildings on the above-described premises" encroached on the street. One of the counterparts was delivered to the intending purchaser for execution, who in exchange

for the counterpart signed by the landowner delivered the one left with him for signature with the letter "s" erased from the words "walls" and "buildings," which fact he concealed. *Held*, that plaintiff in an action to recover the deposit on execution of the contract because of defendant's inability to give title as agreed was estopped from asserting the falsity of its representation that the paper delivered to defendant had not been altered.

**2. SAME.**

Where parties to a contract executed counterparts of the same, and the papers were exchanged, and plaintiff had altered the language of the one executed by him without the knowledge of defendant, if plaintiff intended to rely upon the contract as changed it was bound to assert such alteration, as its request to defendant to deliver the counterpart signed by him involved a representation by plaintiff that this was the form adopted by the parties in the counterparts to be exchanged.

**3. SAME—RECOVERY OF DEPOSIT.**

In an action to recover money deposited by purchaser on contract for the sale of real estate, evidence *held* to entitle defendant to judgment on the merits.

Action by the Webster Realty Company against William M. Thomas. Judgment for defendant.

L. Laflin Kellogg, for plaintiff.

William B. Ellison, James P. Albright, and Arnold L. Davis, for defendant.

BISCHOFF, J. The plaintiff's claim is founded upon the defendant's inability to give title, as agreed, to certain premises, consisting of three adjoining houses situate on the southerly side of 145th street, in that the north wall of each house encroaches some two or three inches upon the street, and, the encroachment being conceded, the question at issue is whether the contract of sale expressed the fact that the property was to be taken subject to this encroachment. The contract was in writing, in the form of counterparts, one of which was signed by each party, and, so signed, delivered to the other on the 22d day of April, 1904. As framed, when reduced at the trial, both papers expressed the matter relating to incumbrances in the form alleged by the complaint, to wit: "It being understood and agreed that the east wall of the most easterly building encroaches about three inches on the premises adjoining on the east and that the north wall of the building on the above-described premises encroaches 2½ to 3¼ inches on the street in front thereof;" but upon bare inspection of these papers it is apparent that there has been an erasure of a letter at the end of the words "wall" and "building" in the phrase "the north wall of the building," and the answer raises an issue as to what the actual agreement was at the time of the execution and exchange of these counterparts. It appears that the papers were prepared in the office of Mr. Albright, the defendant's attorney, on the 8th day of April, one of the forms being written by Mr. Albright and the other by his clerk, the matter to be inserted being read to them by Mr. Eckerson, a real estate broker, who had before him the description of the property as contained in a deed and a title insurance policy from which he read the clause relating to incum-

brances.   These three persons, called as witnesses for the defendant, testify that the form of contract, as written, contained the words "the north walls of the buildings" in the incumbrance clause, agree= ably to the form of the insurance policy, and the papers them- selves clearly bear out the fact that the words "walls" and "build- ings" were written in the plural.   Further, it is testified by these witnesses that no letters were erased by them, and the defendant, in whose presence the papers were prepared, testifies that the words were in the plural when he then examined the counterparts and signed one.   Mr. Eckerson received both papers from the de- fendant at that time, and called at the office of the plaintiff corpora- tion to obtain the latter's execution of the unsigned counterpart and to deliver in exchange that signed by the defendant;  but the plaintiff was not then prepared to accept the contract, and Mr. Eckerson left the unsigned paper at its office, retaining the copy which the defendant had signed.   Thereafter the plaintiff, through its president, communicated its willingness to enter into the contract, and on the 22d day of April the parties met, the plaintiff's president produced the form of contract theretofore left at its office, signed it, and exchanged it with the defendant for the purported counterpart signed by him, at the same time deliver- ing a check for $1,000 as a deposit.

Upon the evidence before me I must hold that when this unsigned counterpart (afterwards executed by the plaintiff) was delivered to the plaintiff by Mr. Eckerson it conformed to the paper then signed by the defendant, and contained the important words "walls" and "buildings" in the plural.   The four witnesses who agree upon this state of facts impress me as thoroughly credible, and the act of any one of them in altering the papers would have been directly contrary to his interests.   The alteration in the paper executed in behalf of the plaintiff was made, of course, before it was signed by the president, Mr. Auerbach, on the 22d of April, when the parties met;  but, with knowledge of the form of the contract in- tended to be evidenced by the writing signed by the defendant, the plaintiff, through its agent, remained silent as to the altera- tion, and exchanged the altered paper for that signed by the de- fendant in the original form, and deemed by him to be a counter- part of the paper thus delivered to him by the plaintiff.   It might be said at this point that the plaintiff has failed to prove a con- tract because of the inharmony of these assumed counterparts when exchanged, and that this action, which proceeds wholly upon an alleged contract, should fail.   This, however, would not con- clude the question in a new action for money had and received, and, as I view the case, the defendant is entitled to judgment upon the merits of the defense that a contract was entered into in form as claimed by him.

It is not necessary to find the precise manner in which the paper signed by the defendant became altered by the erasure of the letter "s" from the words "walls" and "buildings."   It suffices that this paper was framed with these words in the plural when it left the defendant's possession with his signature and came into the hands

of the plaintiff corporation on the 22d day of April. For the purposes of my disposal of the issues, the alteration of this paper becomes immaterial, since the rights of the parties became fixed in accordance with the situation as it existed on the 22d of April, when the papers, in their then form, were exchanged. At the time of this exchange, the plaintiff received from the defendant a signed contract for the sale of real estate, sufficient in all respects to bind the defendant as a memorandum signed by the grantor. To obtain this paper, the sole essential evidence of the agreement to sell as required by statute (Real Property Law, § 224; Laws 1896, p. 602, c. 547), the plaintiff delivered a purported counterpart, knowing, however, that it was not a counterpart because altered in a material respect, and this fact the plaintiff, through its agent, concealed. The very transaction imported a representation by the plaintiff that the proposed form of contract had not been altered for the meeting of the parties was called to exchange counterparts in the form drawn by the defendant and submitted for signature to the plaintiff, whose agent knew that this very form was deemed the form of the intended contract when he received the paper signed by the defendant. Therefore, when the papers were exchanged, the plaintiff, if intending to rely upon a different form of contract, was bound to assert the fact that the paper executed by it had been altered, for its request that the defendant deliver the counterpart signed by him in the form known to all the parties involved a representation by the plaintiff that this was the form adopted in the counterparts to be exchanged. Relying upon this representation, the defendant delivered the paper upon which the plaintiff could proceed to hold him, since the agreement to sell need not be evidenced by a writing except on the part of the grantor, and, having obtained this benefit by a representation of what it had itself agreed to, obviously intending that the defendant should rely upon it, the plaintiff is estopped from asserting that the representation was false. Every necessary element of an estoppel is present here (Big. Estop. c. 18, § 1), and the case is peculiarly one for the application of the principle that a party who has remained silent when conscience required him to speak should not be heard when conscience requires that he be silent.

Holding the plaintiff to the representation that the agreement of sale at all hands conformed to the paper signed and delivered by the defendant, and the fact being found that this paper then expressed an agreement in the form alleged in the answer, it results that the defendant was not in default under the agreement, and the plaintiff is not entitled to a return of the moneys paid on account. There should be judgment for the defendant upon the merits, with costs.

Judgment for defendant, with costs.